**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**David Gregory SURASKY,
Defendant–Appellant.**

**No. 91–8304.**

United States Court of Appeals,
Fifth Circuit.

Sept. 16, 1992.

Rehearing and Rehearing En Banc
Denied Nov. 6, 1992.

Julie Ann Epps, Rienzi, Miss. (Court-appointed), for defendant-appellant.

Richard L. Durbin, Diane D. Kirstein, Asst. U.S. Attys., Ronald F. Ederer, U.S. Atty., San Antonio, Tex., for plaintiff-appellee.

Before VAN GRAAFEILAND,[*] KING, and EMILIO M. GARZA, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

Defendant, David Gregory Surasky, pled guilty to possession of 1348 grams of phenylacetic acid with intent to manufacture methamphetamine, in violation of 21 U.S.C. § 841(d). At sentencing, the district court—adopting the guideline[1] calculations contained in the presentence report (PSR)—sentenced Surasky to 120 months imprisonment. Surasky appeals, maintaining that the district court erred in adopting these calculations. Finding no plain error, we affirm.

### I

Officers of the Cedar Park Police Department executed a search warrant on Surasky's residence and seized 1348 grams phenylacetic acid, along with 4 grams methamphetamine. Surasky was charged by superseding information, and pled guilty to possession of a listed chemical, phenylacetic acid, with intent to manufacture a controlled substance, methamphetamine, in violation of 21 U.S.C. § 841(d).

At sentencing, the district court converted the 1348 grams phenylacetic acid possessed by Surasky to 674 grams phenylacetone, and in turn converted that amount to 505.5 grams methamphetamine[2] in order to arrive at Surasky's base offense level of 28.[3] Surasky made no objection to these calculations at trial. This base offense level, combined with Surasky's criminal history category of III, authorized a guideline range of 97 to 121 months. See U.S.S.G. Ch. 5, Pt. A. The district court imposed the statutory maximum sentence of 120 months. See 21 U.S.C. § 841(d).

### II

Surasky contends that the district court erred in arriving at a base offense level of 28. In particular, Surasky complains that the district court erroneously used the DEA formula contained in the PSR[4] to convert phenylacetic acid to methamphetamine. Surasky argues that the district court should have used the Sentencing Guidelines' Drug Equivalency Tables to convert phenylacetic acid to cocaine or heroin, which would have resulted in a base offense level of 26. See U.S.S.G. § 2D1.1(c) and comment. (n. 10).

Because Surasky failed to raise this objection at trial, we review the district court's ruling only for "plain error."[5] See

---

[*] Senior Circuit Judge of the Second Circuit, sitting by designation.

1. United States Sentencing Commission, *Guidelines Manual*, § 2D1.1 (Nov.1990).

2. The calculations—adopted by the district court from the PSR following a formula commonly used by Drug Enforcement Administration (DEA) chemists—are set out in the PSR as follows:

    1348 grams phenylacetic acid × .50 = 674 grams phenylacetone

    674 grams phenylacetone × .75 = 505.5 grams methamphetamine

    505.5 grams methamphetamine + 4 grams methamphetamine = 509.5 grams methamphetamine

3. The Drug Quantity Table in U.S.S.G. § 2D1.1(c) provides a base offense level of 28 for "[a]t least 400 G but less than 700 G of methamphetamine."

4. *See supra* note 2.

5. The United States argues that the issue raised by Surasky on appeal is a factual issue, and therefore should not be reviewed by this Court, even under the "plain error" standard. *See* Brief for the United States at 9 (citing *United States v. Garcia–Pillado*, 898 F.2d 36 (5th Cir. 1990)). The United States incorrectly characterizes Surasky's complaint as a factual one. Surasky does not dispute the factual finding that he was in possession of 1348 grams phenylacetic acid. He contends that the district court erred

*United States v. Lopez,* 923 F.2d 47, 50 (5th Cir.1991), *cert. denied,* — U.S. —, 111 S.Ct. 2032, 114 L.Ed.2d 117 (1991) (allegedly erroneous determination of defendant's criminal history, not raised at trial, reviewed only for plain error); *United States v. Brunson,* 915 F.2d 942, 944 (5th Cir.1990) (where no objection was made at trial, alleged misapplication of sentencing guidelines reviewed only for plain error). "There is no hard and fast rule for determining whether error is plain; the determination turns upon the facts of a particular case." *United States v. Gerald,* 624 F.2d 1291, 1299 (5th Cir.1980), *cert. denied,* 450 U.S. 920, 101 S.Ct. 1369, 67 L.Ed.2d 348 (1981). However, this Court has stated repeatedly that "plain error" is "error so obvious that our failure to notice it would seriously affect the fairness, integrity, or public reputation of [the] judicial proceedings and result in a miscarriage of justice." *Lopez,* 923 F.2d at 50; *United States v. Bi–Co Pavers,* 741 F.2d 730, 735 (5th Cir. 1984); *United States v. Howton,* 688 F.2d 272, 278 (5th Cir.1982). Plain error is "both obvious and substantial." *Gerald,* 624 F.2d at 1299.

■ Surasky does not take issue with the first component of the district court's calculations—the conversion of 1348 grams phenylacetic acid to 674 grams phenylacetone. *See* Reply Brief of Appellant at 11. Surasky's complaint is directed at the sec-

ond step—the conversion of 674 grams phenylacetone to 505.5 grams methamphetamine. *See id.* Surasky argues that the district court—once it determined that 1348 grams phenylacetic acid was equivalent to 674 grams phenylacetone—should have applied the Drug Equivalency Tables rather than the DEA formula in order to arrive at a base offense level.[6] Had the district court done so, it would have arrived at a base offense level of 26 [7] and a corresponding guideline range of 78–97 months.[8]

Neither the Sentencing Guidelines, nor any other authority, explicitly required the district court to apply the method proposed by Surasky. The Sentencing Guidelines did not explicitly provide *any* method of assigning a base offense level for possession of phenylacetic acid, because that substance was listed in neither the Drug Quantity Table nor the Drug Equivalency Tables.[9] Furthermore, Surasky failed to suggest at sentencing that the district court should adopt the method of computation which Surasky now advocates on appeal. Because the Sentencing Guidelines do not require use of the Drug Equivalency Tables, the district court's failure to do so did not amount to "error so obvious that our failure to notice it would seriously affect the fairness, integrity, or public reputation of [the] judicial proceedings and result in a miscarriage of justice." [10] *Lopez,* 923 F.2d at 50.

in its legal conclusion that the calculations in the presentence report were the appropriate means of assigning a base offense level to Surasky's crime.

**6.** Phenylacetic acid, which Surasky possessed, was listed in neither the Drug Quantity Table nor the Drug Equivalency Tables. Phenylacetone, on the other hand, was listed in the Drug Equivalency Tables, and Surasky argues that the district court should have applied the Drug Equivalency Tables to convert the 674 grams phenylacetone to an equivalent amount of cocaine or heroin. *See infra* note 7.

**7.** The Drug Equivalency Tables provide that "1 gm of Phenylacetone/P2P (when possessed for the purpose of manufacturing methamphetamine) = 2.08 gm of cocaine/0.416 gm of heroin". Therefore, 674 grams phenylacetone

would convert to 1401.92 grams cocaine (674 × 2.08 = 1401.92), or to 280.384 grams heroin (674 × 0.416 = 280.384). *See* U.S.S.G. § 2D1.1, comment. (n.10). The Drug Quantity Table provides that the applicable base offense level for 1401.92 grams cocaine, and for 280.384 grams heroin, is 26. *See* U.S.S.G. § 2D1.1(c).

**8.** Surasky's criminal history category of III, combined with a base offense level of 26, would have led to a guideline range of 78–97 months. *See* U.S.S.G. Ch. 5, Pt. A.

**9.** Phenylacetic acid is listed in the current version of the Sentencing Guidelines. *See* United States Sentencing Commission, *Guidelines Manual* § 2D1.11(d)(5) (Nov.1991).

**10.** Although we find no plain error in the district court's adoption of the DEA conversion

### III .

Finding no plain error, we AFFIRM.

formula, we note that that formula is at odds with the mathematical relationship between phenylacetone and methamphetamine which is contained in U.S.S.G. § 2D1.1.

The Drug Equivalency Tables provide that phenylacetone converts to heroin via a ratio of 1 to .416, *see* U.S.S.G. § 2D1.1, comment. (n. 10); and they also provide that quantities of heroin and methamphetamine are interchangeable for sentencing purposes. *See id.* ("1 gm of Methamphetamine = ... 1.0 gm of heroin.") Because phenylacetone converts to heroin via a ratio of 1 to .416, it converts to methamphetamine via the same ratio.

However, the DEA formula adopted by the district court converts phenylacetone to methamphetamine by a ratio of 1 to .75 rather than 1 to .416. *See supra* note 2. In this respect the DEA formula is in conflict with U.S.S.G. § 2D1.1. We express no opinion as to the result that we might have reached had Surasky objected to the DEA formula at trial.