IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 7, 2008

Charles R. Fulbruge III
Clerk

No. 07-50170

UNITED STATES OF AMERICA,

                                    Plaintiff - Appellee,

v.

RAYMOND MCKINNEY,
also known as Eaven Scott,
also known as Brandon Lee,

                                    Defendant - Appellant.

Appeal from the United States District Court
for the Western District of Texas

Before JONES, Chief Judge, and DAVIS and GARZA, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

The defendant-appellant Raymond McKinney appeals his sentence of 24-months imprisonment imposed upon revocation of his supervised release. First, McKinney challenges the criminal history category that the district court used to calculate the advisory guideline range for his revocation sentence. See U.S. SENTENCING GUIDELINES MANUAL ("U.S.S.G.") § 7B1.4(a) (2007). Second, McKinney argues that his sentence is unreasonable. We AFFIRM.

I

McKinney was convicted of possession with intent to distribute less than 50 grams of cocaine base within 1,000 feet of a secondary school (count one) and possession with intent to distribute less than 50 grams of cocaine base (count two). The presentence report ("PSR") assigned McKinney a total offense level of 28 and a criminal history category of VI; his resulting guideline range of imprisonment was 140 to 175 months. At sentencing, the district court denied McKinney's objection to the calculation of his criminal history category and determined, consistent with the PSR's recommendation, that McKinney's criminal history category was VI. However, the district court concluded that McKinney was entitled to a downward departure pursuant to U.S.S.G. § 4A1.3 because McKinney's criminal history category of VI over-represented the seriousness of his criminal history. McKinney consequently was sentenced to 100 months of imprisonment and an eight-year term of supervised release. His sentence corresponded to a criminal history category of III.

McKinney appealed his conviction and sentence. This court remanded the case to the district court for dismissal of count one and re-sentencing on count two. On remand, the district court sentenced McKinney to 60 months of imprisonment and a three-year term of supervised release. His supervised release began in March 2005.

In April 2006, McKinney's probation officer petitioned the district court for an arrest warrant. The probation officer stated that McKinney had violated a condition of his supervised release: in January 2006, McKinney was arrested and charged with possession of a controlled substance (ecstasy); possession of marijuana; assault on a public servant; resisting arrest; and evading arrest.[1]

---

[1] Additionally, in July 2005, McKinney was arrested and charged with possession of marijuana. The probation officer reported the offense at that time. However, the charge was dismissed due to insufficient evidence and the probation officer therefore recommended that no action be taken.

The Government moved to revoke McKinney's supervised release. The Government specifically noted that McKinney had received a "lenient imprisonment sentence" at his initial sentencing, did not complete a court-recommended drug treatment program while imprisoned, and had escaped from the prerelease halfway house to which he was assigned. McKinney pleaded not true to the allegations.[2]

The district court conducted a hearing to determine McKinney's involvement in the events on which the revocation motion was based. The court concluded that there was sufficient cause to revoke McKinney's supervised release. The court noted that the most serious crime with which McKinney had been charged was a Grade B violation. See U.S.S.G. § 7B1.1. The court further found that McKinney had a criminal history category of VI; accordingly, his guideline range of imprisonment was 21 to 24 months.[3] See U.S.S.G. § 7B1.4.

McKinney questioned the district court's proposed guideline range of imprisonment; McKinney asserted that he "was never sentenced in Category VI" because the original sentencing court's decision to depart downward pursuant to § 4A1.3 resulted in his criminal history category being altered to category III. McKinney further urged the court to "give all due consideration" to the prescriptions of "the Chapter 7 Guidelines," which "[have] given adequate consideration . . . to criminal history[.]" The district court sentenced McKinney

---

[2] The Government also filed an amended motion to revoke in which it alleged that McKinney had possessed methamphetamine while on supervised release and had assaulted a jail guard while imprisoned on the January 2006 charges. However, the district court proceeded with the revocation hearing without considering the allegations in the amended motion.

[3] A Grade B violation by an offender with a criminal history category of VI yields a guideline range of imprisonment of 21 to 27 months. See U.S.S.G. § 7B1.4(a). However, McKinney was subject on revocation to a statutory maximum sentence of 24-months imprisonment. See 18 U.S.C. §§ 3559(a)(3), 3583(e).

to 24 months of imprisonment and ordered his participation in a drug treatment program. McKinney appealed.

## II

McKinney asserts that the district court erred in using criminal history category VI at his revocation sentencing. He argues that where, as here, the district court granted a departure from the applicable criminal history category for the reasons stated in U.S.S.G. § 4A1.3 at the original sentence, the criminal history category to be used upon revocation is the post-departure criminal history category. Because McKinney's post-departure criminal history category was III, he argues that the district court erred in using his pre-departure criminal history category of VI to determine the advisory guideline range. McKinney further alleges that the district court's resulting sentencing decision was unreasonable and asserts that the case should be remanded for re-sentencing within the appropriate guideline range.

If the district court finds by a preponderance of the evidence that a defendant has violated a condition of his supervised release, it has the discretion to revoke the previous sentence and impose a term of imprisonment. See 18 U.S.C. § 3583(e)(3); United States v. Arbizu, 431 F.3d 469, 470 (5th Cir. 2005). The district court may impose any sentence that falls within the appropriate statutory maximum term of imprisonment allowed for the revocation sentence. See § 3583(e)(3). In so doing, the district court is directed to consider the factors enumerated in 18 U.S.C. § 3553(a), including the non-binding policy statements found in Chapter Seven of the Sentencing Guidelines Manual. § 3583(e); see United States v. Gonzalez, 250 F.3d 923, 929–30 (5th Cir. 2001); United States v. Mathena, 23 F.3d 87, 90, 92 (5th Cir. 1994). This court reviews the district court's interpretation and application of the Guidelines de novo. See United States v. Villanueva, 408 F.3d 193, 202 (5th Cir. 2005); Mathena, 23 F.3d at 89.

Prior to Booker, this court would uphold a sentence imposed "after revocation of supervised release unless it [was] in violation of law or [was] plainly unreasonable." United States v. Stiefel, 207 F.3d 256, 259 (5th Cir. 2000) (internal quotation marks omitted); see 18 U.S.C. § 3742(e)(1), (4). In Booker, however, the Supreme Court excised § 3742(e) and directed appellate courts to review for unreasonableness. United States v. Booker, 543 U.S. 220, 260–62 (2005); see also Gall v. United States, 128 S. Ct. 586, 594 (2007) ("[A]ppellate review of sentencing decisions is limited to determining whether they are 'reasonable.'"). This court has declined to resolve which standard of review applies to revocation sentences after Booker; instead, this court has reviewed revocation cases under (a) both the "plainly unreasonable" and the Booker unreasonableness standards of review or (b) the more exacting Booker unreasonableness standard. See United States v. Hinson, 429 F.3d 114, 119–20 (5th Cir. 2005). We again decline to resolve this issue because, as stated below, we conclude that McKinney's sentence was neither unreasonable nor plainly unreasonable.

As a final preliminary issue, the Government argues that we should review McKinney's objection to the district court's application of criminal history category VI for plain error because McKinney failed adequately to object on this basis below and thus did not preserve the issue. We disagree. McKinney's announcement to the district court that he was originally sentenced in criminal history category III and his request to the district court to give all due consideration to the Chapter 7 Guidelines was sufficient to preserve the issue for appellate review. Therefore, the plain error standard does not apply.

## III

McKinney argues that the district court used the incorrect criminal history category to calculate the advisory guideline range at his revocation sentencing. There are no applicable guidelines for sentencing after revocation of supervised release; instead, the sentencing guidelines include policy statements concerning the revocation of supervised release. See U.S.S.G. Ch. 7, Pt. B, introductory comment. Section 7B1.4(a), p.s., provides advisory imprisonment ranges for defendants whose terms of supervised release have been revoked. The sentencing ranges are based on both the defendant's criminal history and the severity of the defendant's supervised release violation. See § 7B1.4(a); § 7B1.1, p.s.

The criminal history category under § 7B1.4(a) is defined as "the category applicable at the time the defendant was originally sentenced to a term of supervision." The question in this case is whether the criminal history category "applicable" at the time of the defendant's original sentence is the pre- or post-departure category, in a case where a district court originally departed from that criminal history category for the reasons stated in U.S.S.G. § 4A1.3 (Adequacy of Criminal History Category). Section § 7B1.4(a) does not elaborate on this issue. However, the commentary to § 7B1.4 is instructive.

The commentary's interpretation of the guidelines is generally authoritative. See United States v. Austin, 479 F.3d 363, 367 (5th Cir. 2007); Stinson v. United States, 508 U.S. 36, 38 (1993) ("[C]ommentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline."). We apply ordinary rules of statutory construction when interpreting the commentary. Austin, 479 F.3d at 367–68.

Application Note 1 of the commentary to § 7B1.4 explains that the "criminal history category to be used in determining the applicable range of imprisonment in the Revocation Table is the category determined at the time the defendant originally was sentenced to the term of supervision."[4] The note does not clarify what it means for a criminal history category to be "determined." However, according to U.S.S.G. § 4A1.1, the criminal history category is determined by aggregating the total criminal history points assigned pursuant to that section. See U.S.S.G. § 4A1.1 cmt. ("The total criminal history points from § 4A1.1 determine the criminal history category (I–VI) . . . ."). Related departures (e.g., § 4A1.3) are not described as components in the calculation of criminal history categories. See id. The Guidelines thus support the view, advanced by the Government, that the criminal history category "determined" at the time of the defendant's original sentence refers to the category arrived at after aggregating the defendant's total criminal history points, without regard to the analytically distinct step of determining whether a particular departure from that category is warranted.[5]

---

[4] Application Note 1 provides in full:

The criminal history category to be used in determining the applicable range of imprisonment in the Revocation Table is the category determined at the time the defendant originally was sentenced to the term of supervision. The criminal history category is not to be recalculated because the ranges set forth in the Revocation Table have been designed to take into account that the defendant violated supervision. In the rare case in which no criminal history category was determined when the defendant originally was sentenced to the term of supervision being revoked, the court shall determine the criminal history category that would have been applicable at the time the defendant originally was sentenced to the term of supervision. (See the criminal history provisions of §§ 4A1.1–4B1.4.)

[5] The Eight Circuit has adopted this view and described the criminal history category determined by calculating the criminal history points from § 4A1.1 as the "true criminal history category," regardless of whether the defendant benefits from a subsequent departure from that category. United States v. Hendershot, 469 F.3d 703, 705 (8th Cir. 2006) ("At his original sentencing, Hendershot benefitted from a § 4A1.3 departure to criminal history category III; his true criminal history, however, remained category VI.")

This view finds further support in Application Note 2. Application Note 2 is the only commentary to § 7B1.4 that specifically addresses the issue of criminal history category departures in the revocation context. This note is thus particularly instructive. The first sentence of Application Note 2 provides: "Departure from the applicable range of imprisonment in the Revocation Table may be warranted when the court departed from the applicable range for reasons set forth in § 4A1.3 (Adequacy of Criminal History Category)."[6] U.S.S.G. § 7B1.4 cmt. n.2. We agree with the Eighth Circuit's interpretation of this note: "We read this note to instruct sentencing courts to calculate a defendant's criminal history category as it was in the original proceeding prior to any § 4A1.3 departure that was granted; if the court then sees fit to grant a departure, that is within its discretion." Hendershot, 469 F.3d at 705.[7] The Eighth Circuit reasoned that a contrary interpretation "would render this application note's anticipation of a criminal history category departure redundant, for the defendant's criminal history category for the revocation sentence would already be the departed-to category used during the original sentencing proceeding." Id. We find this reasoning persuasive and adopt it.

---

[6] In full, Application Note 2 states:

Departure from the applicable range of imprisonment in the Revocation Table may be warranted when the court departed from the applicable range for reasons set forth in § 4A1.3 (Adequacy of Criminal History Category) in originally imposing the sentence that resulted in supervision. Additionally, an upward departure may be warranted when a defendant, subsequent to the federal sentence resulting in supervision, has been sentenced for an offense that is not the basis of the violation proceeding.

[7] The Seventh Circuit has reached the same result. See United States v. Marasas, 62 Fed. Appx. 727, 730 (7th Cir. 2003) (unpublished opinion) ("Upon revocation the district court was not bound by its original decision to depart [from V to I]; the guideline range for the violation is based on the actual criminal history category calculated at the initial sentencing."); United States v. LeBlanc, 45 F.3d 192, 193 n.1 (7th Cir. 1995) (advisory range for supervised-release violator, who had originally received a § 4A1.3 downward departure, "would be based in part on the real criminal history category determined at the time of sentencing, which is not to be recalculated").

McKinney argues that Hendershot erred by treating the decision to depart under § 4A1.3 as separate from the criminal history category determination. McKinney claims that the redundancy identified in Hendershot is illusory because Application Note 2 is best read to refer to a possible upward departure, and not a redundant downward departure. In other words, if the defendant received a downward departure to a lower criminal history score originally, Application Note 2 provides that the district court may want to consider departing back upward at the revocation sentencing.

McKinney's argument fails for two reasons. First, his argument ignores Application Note 4, which already provides for exactly what McKinney describes. See U.S.S.G. § 7B1.4, cmt. n.4 ("Where the original sentence was a result of a downward departure . . . an upward departure may be warranted."). Because of the presence of Application Note 4, McKinney's reading would render the first sentence of Application Note 2 largely superfluous. See Waggoner v. Gonzales, 488 F.3d 632, 636 (5th Cir. 2007) ("We must read the statute as a whole, so as to give effect to each of its provisions without rendering any language superfluous." (internal quotation marks omitted)). Second, McKinney's argument does not address the fact that the first sentence of Application Note 2 does not distinguish between upward and downward departures, but rather refers to departure generally, in contrast to other more specific parts of the commentary. See, e.g., U.S.S.G. § 7B1.4 cmt. n.2 (noting in the second sentence that "an upward departure may be warranted . . ."); id. at n.4 ("an upward departure may be warranted . . ."). McKinney's interpretation fails to address the situation where a district court granted a prior upward departure.

McKinney makes several additional arguments, none of which persuade us to abandon our interpretation of Application Note 2. First, McKinney points out that Application Note 1 provides that "[t]he criminal history category is not to be recalculated because the ranges set forth in the Revocation Table have

been designed to take into account that the defendant violated supervision." He argues that the district court's use of the pre-departure criminal history category impermissibly recalculated his applicable criminal history category. However, we read this direction in note 1 merely to inform district courts that the supervised release violation is not to be included in the calculation of the defendant's aggregate criminal history points under § 4A1.1.

Second, McKinney relies on another part of Application Note 1, which provides:

> In the rare case in which no criminal history category was determined when the defendant originally was sentenced to the term of supervision being revoked, the court shall determine the criminal history category that would have been applicable at the time the defendant originally was sentenced to the term of supervision. (See the criminal history provisions of §§ 4A1.1–4B1.4.)

U.S.S.G. § 7B1.4 cmt. n.1 (emphasis added). McKinney argues that this part of the note makes clear that "the criminal history category . . . applicable at the time the defendant originally was sentenced," § 7B1.4(a), p.s., is determined by using the "criminal history provisions of §§ 4A1.1–4B1.4." He points out that policy statement § 4A1.3, which discusses departures from the criminal history category, is included within the range of provisions referenced in the see citation. As such, he argues that such departures should be included in determining the "applicable" criminal history category.

We first note that Application Note 1 refers to the "rare" case, which we are not presented with here. Moreover, we are not persuaded that the inclusion of the policy statement on departures within the broad range of "criminal history provisions" referenced in the see citation means that such departures necessarily are used to determine the applicable criminal history category. The policy statement on departures in § 4A1.3 sheds light on the other "criminal history provisions." Thus, it serves a functional purpose in determining the applicable criminal history category, even if the departed-to criminal history category does

not itself constitute the "applicable" criminal history category. Finally, while we doubt that the Commission deliberated much over the substantive meaning of this particular *see* citation, the inclusion of § 4A1.3 might also be independently relevant in determining the applicability of Application Note 2 in the "rare" case.

Finally, while not mentioned by McKinney, we note that "departure" is defined in the Guidelines for purposes of § 4A1.3 as the "assignment of a criminal history category other than the otherwise applicable criminal history category, in order to effect a sentence outside the applicable guideline range." U.S.S.G. § 1B1.1 cmt. n.1(E) (emphasis added). This definition of "departure" arguably supports McKinney's position. The reference to the pre-departure criminal history category as the "otherwise applicable criminal history category" suggests that the pre-departure criminal history category may not be the "applicable" criminal history category. As a result, arguably, the subsequently assigned criminal history category—following the departure—could be considered the "applicable" criminal history category. However, such a reading while plausible, is speculative. The policy statement on revocation sentencing, § 7B1.4, refers to the "applicable" criminal history category, not the "assigned" criminal history category. More importantly, this definition does not explain the redundancy problem posed by McKinney's interpretation of Application Note 2. We decline to construe this vague, general definition in a manner that renders Application Note 2—which specifically applies to the circumstances of this case—functionally absurd or superfluous.

We therefore hold that where a district court granted a departure for the reasons set forth in U.S.S.G. § 4A1.3 at the time the defendant originally was sentenced to a term of supervised release, upon revocation of supervised release, the applicable criminal history category for determining the advisory revocation sentencing range under U.S.S.G. § 7B1.4(a), p.s., is that criminal history category determined prior to any such departure.

Here, the pre-departure criminal history category determined by the district court at the defendant's original sentence was VI.  Therefore, we find no error in the district court's application of that criminal history category to determine the advisory guideline range at the defendant's revocation sentencing.  The district court correctly calculated the applicable advisory guideline range for the defendant's sentence at 21 to 24 months imprisonment.  Furthermore, the district court's imposition of a sentence or 24-months imprisonment, within the advisory guidelines range and the statutory maximum, was neither unreasonable nor plainly unreasonable.  See Hinson, 429 F.3d 114, 119–20 (5th Cir. 2005).  For these reasons, we AFFIRM.