IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 12, 2008

Charles R. Fulbruge III
Clerk

No. 07-40294

UNITED STATES OF AMERICA

Plaintiff - Appellee

v.

NOE YBARRA, JR.

Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Texas
(2:01-CR-00299)

Before SMITH, WIENER, and HAYNES, Circuit Judges.

PER CURIAM:[*]

Defendant-Appellant Noe Ybarra, Jr. challenges the district court's revocation of his supervised release, the forty-two month supervised release revocation sentence imposed by the court, and the sex offender conditions attached to the additional fifteen-month term of supervised release mandated by the court. For the following reasons, we affirm the judgment of the district court in all respects.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

## I. Facts and Proceedings

In October 2001, Ybarra pleaded guilty to two counts of possession of marijuana with intent to distribute, in violation of 21 U.S.C. § 841(a). He was sentenced to fifty months of imprisonment followed by a three-year term of supervised release, which began in May 2005.

In January 2007, the United States Probation Office filed a petition to revoke Ybarra's supervised release, alleging that he had committed six violations: (1) Reckless driving in May 2006; (2) assault on his former girlfriend, Maria De La Luz Saldana, in October 2006; (3) sexual assault on Saldana in November 2006; (4) failure to follow the instructions of his probation officer to stay away from Saldana in November 2006; (5) failure to notify his probation officer of his arrests in October and November 2006; and (6) physical assault on Saldana in January 2007.

Ybarra pleaded true to violations (4) and (5). He did not plead true to violations (1) and (2), but neither did he contest the government's evidence as to those violations, so the district court found that Ybarra had committed them. Although Ybarra pleaded not true to violations (3) and (6), the district court found Ybarra guilty on these two violations as well following a lengthy, three-day supervised release revocation hearing in February and March 2007.

Having determined that Ybarra committed all six alleged violations, the district court concluded that Ybarra had violated his supervised release on both counts of his original conviction. The court sentenced Ybarra to twenty-one months imprisonment on each of his two original convictions for possession of marijuana, for a total of forty-two months, followed by fifteen months of additional supervised release. As special conditions of the additional fifteen months of supervised release, the court ordered Ybarra to participate in anger management counseling and to refrain from contacting Saldana. The court also

ordered Ybarra to undergo sex offender counseling and to register as a sex offender (the "sex offender conditions").

Ybarra timely filed a notice of appeal.

## II. Analysis

On appeal, Ybarra contends that the district court erred in: (a) finding that he committed violations (3) and (6); (b) imposing an unreasonable forty-two month sentence; and (c) imposing the sex offender conditions. The first and second issues raised by Ybarra are near frivolous and thus quickly dismissed below. The third issue raised by Ybarra, however, has at least colorable merit, and is discussed in greater detail below.

## A. Standard of Review

We review the district court's decision to revoke supervised release for abuse of discretion.[1] A district court does not abuse its discretion in revoking a defendant's supervised release if a preponderance of the evidence satisfies the court that the defendant has failed to comply with the conditions of supervised release.[2] We review sentences imposed following revocation of supervised release for unreasonableness,[3] and conditions imposed on supervised release for abuse of discretion.[4]

## B. Revocation of Supervised Release

The district court did not abuse its discretion. The revocation of Ybarra's supervised release was plainly justified on the basis of the four charged

---

[1] United States v. Spraglin, 418 F.3d 479, 480 (5th Cir. 2005).

[2] United States v. McCormick, 54 F.3d 214, 219 (5th Cir. 1995) (citing 18 U.S.C. § 3583(e)(3)).

[3] United States v. McKinney, 520 F.3d 425, 428 (5th Cir. 2008).

[4] United States v. Talbert, 501 F.3d 449, 452 (5th Cir. 2007).

violations that Ybarra did not contest. Although our inquiry need go no further,[5] Ybarra contends that we should address his claim of error as to violations (3) and (6) because the court's finding that he committed these two violations "influenced" and "tainted" the sentence imposed.

## C. Commission of Violations (3) and (6)

Ybarra contends that the district court erred in holding that he committed violation (3), the sexual assault of Saldana in November 2006, and violation (6), the physical assault of Saldana in January 2007. He argues that the district court's conclusion that he committed these violations was based on erroneous evidence, viz., Saldana's testimony, which, according to Ybarra, was incredible as a matter of law.

Even if, arguendo, we were to agree with Ybarra that his sentence following revocation of supervised release was driven by the two alleged violations that he contested, not the four violations that he did not contest, Ybarra's claim that the evidence was insufficient to prove that he committed violations (3) and (6) is unconvincing. To support his argument that Saldana's testimony was incredible as a matter of law, Ybarra points to numerous inconsistencies in her testimony and conflicts between her testimony and the testimony of other witnesses at the revocation hearing. Saldana's testimony may have been riddled with inconsistencies, but because she was physically present at the November 2006 sexual assault and the January 2007 physical assault, and the facts to which she testified are entirely plausible "under the laws of nature," her testimony was not incredible as a matter of law.[6] The

---

[5] McCormick, 54 F.3d at 219 n.3 ("Where there is an adequate basis for the district court's discretionary action of revoking probation, the reviewing court need not decide a claim of error as to other grounds that had been advanced as a cause of revocation." (internal quotation marks omitted)).

[6] United States v. Gadison, 8 F.3d 186, 190 (5th Cir. 1993) ("To be considered incredible as a matter of law, a witness' testimony must assert . . . facts that the witness physically could

district court's finding that Ybarra committed the charged sexual and physical assaults was based on its assessment of Saldana's credibility.  Absent a showing that Saldana's testimony was incredible as a matter of law, we defer to the district court's credibility determination.[7]  The district court did not abuse its discretion in finding Ybarra committed violations (3) and (6).  Thus, even if the court was strongly influenced by these two violations in revoking supervised release or in determining Ybarra's sentence, there was no error.

D.  Ybarra's Sentence

Ybarra contends that the forty-two month sentence imposed by the district court is unreasonable and violates his due process rights because it is based on unreliable information.  He further asserts that the court erred in imposing this sentence because it is twice as long as the high end of the United States Sentencing Guidelines range of twenty-one months.

When sentencing a defendant pursuant to the revocation of supervised release, the district court may impose any sentence that falls within the appropriate statutory maximum term of imprisonment allowed for the revocation sentence.[8]  Before imposing a supervised release revocation sentence, the court must consider the sentencing factors enumerated in 18 U.S.C. § 3553(a), including the nonbinding policy statements found in Chapter Seven of the Guidelines.[9]

"Prior to Booker, this court would uphold a sentence imposed 'after revocation of supervised release unless it [was] in violation of law or [was]

---

not have observed or events that could not have occurred under the laws of nature." (internal quotation marks omitted)).

[7] United States v. Alaniz-Alaniz, 38 F.3d 788, 791 (5th Cir. 1994).

[8] 18 U.S.C. § 3583(e)(3).

[9] United States v. Mathena, 23 F.3d 87, 89 (5th Cir. 1994).

plainly unreasonable.'"[10] "In Booker, however, the Supreme Court . . . directed appellate courts to review for unreasonableness."[11] "This court has declined to resolve which standard of review applies to revocation sentences after Booker; instead, this court has reviewed revocation cases under (a) both the 'plainly unreasonable' and the Booker unreasonableness standards of review or (b) the more exacting Booker unreasonableness standard."[12]

We need not decide the precise post-Booker standard of review for a sentence imposed on revocation of supervised release because, in the instant case, the sentence imposed by the district court was neither unreasonable nor plainly unreasonable. First, because we defer to the district court's determination that Saldana's testimony was credible, Ybarra's forty-two month sentence was not based on inherently unreliable information regarding violations (3) and (6). Second, contrary to Ybarra's contention, the sentence imposed was not an upward variance from the recommended Guidelines range. The district court, in fact, adhered to the Guidelines recommendation and sentenced Ybarra to serve twenty-one months as to each of the two original counts for which he was originally convicted, albeit they are to be served consecutively, for a total of forty-two months.[13] Neither did the court err in

---

[10] United States v. McKinney, 520 F.3d 425, 428 (5th Cir. 2008) (quoting United States v. Stiefel, 207 F.3d 256, 259 (5th Cir. 2000)).

[11] McKinney, 520 F.3d at 428.

[12] Id. (citing United States v. Hinson, 429 F.3d 114, 119-20 (5th Cir. 2005)).

[13] Ybarra originally committed two class C felonies. The maximum sentence that could be imposed on revocation was two years on each count. See 21 U.S.C. § 841(b)(1)(C); 18 U.S.C. §§ 3559(a)(3), 3583(e)(3). Ybarra also had a criminal history category of II and Grade A probation violations. U.S.S.G. § 7B1.1(a). The Sentencing Commission recommends that defendants with Grade A violations and criminal history categories of II be sentenced upon revocation of supervised release to serve between fifteen and twenty-one months of imprisonment. Id. at § 7B1.4(a). The district court sentenced Ybarra to twenty-one months on each of his two original convictions.

imposing two sentences to run consecutively.[14] Ybarra's claim that his sentence is unreasonable is unavailing.

## E. Sex Offender Conditions

Ybarra insists that the district court erred in requiring him to (a) participate in sex offender counseling and (b) register as a sex offender, as conditions of his supervised release. Specifically, Ybarra contends that the court erred because he has never been convicted of a sex offense, Saldana's testimony regarding the sexual assault was incredible as a matter of law, and the conditions are overbroad and not reasonably related to the statutory sentencing goals of 18 U.S.C. § 3553(a).

As noted earlier, we ordinarily review the conditions imposed on supervised release for abuse of discretion.[15] But since Ybarra did not object when, at the revocation hearing, the probation officer recommended that sex offender registration and counseling be imposed as conditions of his supervised release, we review for plain error.[16] Plain error arises when "(1) there was an error; (2) the error was clear and obvious; and (3) the error affected the defendant's substantial rights."[17] If such error is found, the court exercises its discretion to correct the error if it "seriously affects the fairness, integrity, or public reputation of judicial proceedings."[18] "[T]his Court has stated repeatedly that plain error is error so obvious that our failure to notice it would seriously

---

[14] United States v. Gonzalez, 250 F.3d 923, 926-29 (5th Cir. 2001) (holding that, under 18 U.S.C. § 3584(a), district court has authority, upon revocation of concurrent terms of supervised release, to impose consecutive revocation sentences).

[15] United States v. Talbert, 501 F.3d 449, 452 (5th Cir. 2007).

[16] Id.

[17] United States v. Villegas, 404 F.3d 355, 358 (5th Cir. 2005).

[18] Id. at 359 (internal quotation marks omitted).

affect the fairness, integrity, or public reputation of [the] judicial proceedings and result in a miscarriage of justice."[19]

A district court has "wide discretion"[20] to impose any condition of supervised release "it considers to be appropriate" if the conditions are "reasonably related" to four factors: "(1) 'the nature and circumstances of the offense and the history and characteristics of the defendant,' (2) the need 'to afford adequate deterrence to criminal conduct,' (3) the need 'to protect the public from further crimes of the defendant,' and (4) the need 'to provide the defendant with needed [training], medical care, or other correctional treatment in the most effective manner.'"[21] A reasonable relationship with but one of the four factors is required,[22] thus the fact that a condition is not related to the crime of conviction does not, by itself, render a condition invalid.[23] The condition must, however, "involve[] no greater deprivation of liberty than is reasonably necessary" to achieve the policies of deterrence, rehabilitation, and protection of the public.[24]

1. Sex Offender Counseling

The district court did not plainly err in requiring Ybarra to participate in sex offender counseling as a condition of his supervised release. For defendants

---

[19] United States v. Surasky, 974 F.2d 19, 21 (5th Cir. 1992) (internal quotation marks omitted).

[20] United States v. Paul, 274 F.3d 155, 164 (5th Cir. 2001).

[21] 18 U.S.C. § 3583(d)(1); Paul, 274 F.3d at 165 (quoting 18 U.S.C. § 3583(a)(1)-(2)).

[22] See United States v. Love, 431 F.3d 477, 484 (5th Cir. 2005) (noting that special condition only has to be "related to a punitive goal" out of four goals set forth in the statute (emphasis added)); see also United States v. Brown, 402 F.3d 133, 137 (2d Cir. 2005) ("Despite the use of the conjunctive in the Guidelines, a condition may be imposed if it is reasonably related to any one or more of the specified factors." (internal quotation marks omitted)).

[23] United States v. York, 357 F.3d 14, 20 (1st Cir. 2004).

[24] 18 U.S.C. § 3583(d)(2) (emphasis added).

who, like Ybarra, have never been convicted of a sex offense, the First and Seventh Circuits have upheld the imposition of sex offender counseling, under plain error review, when "there was sufficient evidence of a propensity for a future sex offense that requires deterrence or can be considered a threat to public safety."[25] The district court found that Ybarra sexually assaulted Saldana and physically assaulted her after she refused to have sex with him. These findings provide a "reasonable relationship" between the sex offender counseling mandated by the district court and the need to deter Ybarra's future criminal conduct, to protect the public from his future crimes and to provide Ybarra with "correctional treatment."[26] Because the other supervised release conditions imposed by the court — that Ybarra not contact Saldana and that he undergo anger management counseling — do not adequately address the problems posed by Ybarra's sexual and domestic abuse violations, sex offender counseling does not impose a greater deprivation of Ybarra's liberty than is "reasonably necessary" to further deterrence, rehabilitation, and protection of the public. Ybarra's contention that the court erred in requiring counseling, therefore, does not clear the high hurdle of plain error review.

2. Sex Offender Registration

Whether the district court erred in requiring that Ybarra register as a sex offender presents a more difficult question for this court. Section 3583(d) requires that, "as an explicit condition of supervised release," a defendant convicted of a sex offense must register as a sex offender.[27] Ybarra has not been

---

[25] United States v. Jimenez, No. 06-41678, 2008 WL 1881462, at *7 (5th Cir. April 29, 2008) (citing United States v. Prochner, 417 F.3d 54, 63-64 (1st Cir. 2005); United States v. Ross, 475 F.3d 871, 875-76 (7th Cir. 2007)).

[26] 18 U.S.C. §§ 3583(d)(1); 3553(a)(2)(D).

[27] 18 U.S.C. § 3583(d). Specifically, § 3583(d) states that any person "required to register under the Sex Offender Registration and Notification Act" register as a sex offender. Id. To be required to register as a sex offender under the Sex Offender Registration and

convicted of a sex offense, and thus is not required to register as a sex offender. Nevertheless, the fact that Ybarra is not a convicted sex offender does not end our inquiry, as § 3583(d) does not expressly prohibit the imposition of sex offender registration for offenders with no history of sex offense convictions,[28] especially given the "wide discretion" afforded to the district courts to impose conditions on supervised release.[29]

Courts have held that sex offender registration involves a more serious liberty deprivation than does sex offender counseling. In United States v. Prochner, the First Circuit upheld conditions of supervised release relating to sex offender treatment, despite the fact that the defendant had never been convicted of a sex offense.[30] The court determined that the condition of sex offender treatment did not involve a greater deprivation of liberty than was necessary, but specifically noted that the defendant had not been required to register as a sex offender, which it found to be "a stigmatizing condition."[31] Similarly, in an unpublished opinion, we upheld conditions of supervised release requiring a defendant who had not been convicted of a sex offense to participate in sex offender treatment, but also distinguished sex offender treatment from sex offender registration.[32]

---

Notification Act, the person must have been "convicted of a sex offense." 42 U.S.C. § 16911(1).
    Similarly, the Guidelines require — as a mandatory condition of supervised release — that a defendant convicted of a sexual offense, as defined in 18 U.S.C. § 4042(c)(4), register as a sex offender. U.S.S.G. § 5D1.3(a)(7).

[28] Prochner, 417 F.3d at 63 ("Nothing contained in the statute . . . limits the condition of sex offender treatment just to individuals convicted of sex offenses.").

[29] United States v. Paul, 274 F.3d 155, 164 (5th Cir. 2001).

[30] 417 F.3d at 64.

[31] Id. & n.7.

[32] See United States v. Penny, 215 F. App'x 336, 337 (5th Cir. 2007).

Although the requirement that Ybarra register as a sex offender is a greater deprivation of liberty than is the requirement that he undergo sex offender treatment, we cannot conclude that imposition of sex offender registration constituted plain error, given the lack of circuit or Supreme Court precedent prohibiting imposition of this condition in any circumstance save supervised release following a sex offense conviction.[33] We are sympathetic to the argument that the stigma of sex offender registration may eventually hinder, rather than help, Ybarra's post-release rehabilitation, and we appreciate that the imposition of sex offender registration is somewhat unusual when, as here, the offenses underlying the original conviction were not sexual in nature.

---

[33] Neither this court nor any of our sister circuits has directly addressed this issue, in the context of plain error review, in a published decision.

Although we are under no obligation to follow an unpublished opinion, we note that even if, arguendo, United States v. Jimenez, No. 06-41678, 2008 WL 1881462, at *1 (5th Cir. April 29, 2008), were binding precedent, it is distinguishable from this case. In Jimenez, we found that the district court had committed plain error in requiring a defendant whose underlying conviction was not for a sex offense to register as a sex offender pursuant to the revocation of supervised release. Jimenez is similar to this matter in many respects: The district court found that Jimenez had committed sex offense violations of the terms of his supervised release, as has Ybarra. Our holding in Jimenez, however, focused on process. We held that the district court's plain error in requiring Jimenez to register as a sex offender occurred because the "only evidence arguably related to a propensity to commit a sex offense consists of three allegations from three young victims contained in the investigative police reports." Id at *7. The district court's plain error was in not allowing for a process by which evidence concerning Jimenez's propensity to commit a sex offense could be presented and disputed: The court conducted only a brief supervised release revocation hearing, at the end of which, almost as an afterthought, it added on sex offender registration. Id. at.*1.

In the instant case, in stark contrast, the judge held many hours of hearings over the course of a month before determining that Ybarra had violated the terms of his supervised release by committing, inter alia, sexual assault and physical assault related to the refusal of sexual advances. During these hours of hearings, significant evidence concerning Ybarra's sexual and physical assaults was presented to the court — evidence much more substantial than "three allegations from three young victims contained in the investigative police reports," as in Jimenez. Id. at *7. It is certainly not plain error to conclude that past behavior can be indicative of a "propensity to commit a sex offense." Id. We are satisfied that the district judge provided a satisfactory process in which evidence of Ybarra's propensity to commit a sex offense could be, and was, presented and debated. This case and our Jimenez decision differ in this important respect.

Although extensive hearings on whether Ybarra assaulted Saldana were held, the issue of sex offender registration received relatively scant attention.

Had an objection been raised, the record on this point could have been more fully developed. None was. As a result, our standard of review in this case is for plain error, meaning that we will reverse only if the district court's decision threatens "the fairness, integrity, or public reputation of [the] judicial proceedings and result[s] in a miscarriage of justice."[34] Even assuming that requiring Ybarra to register as a sex offender was error, and that the error was clear and obvious, the fact remains that the district court imposed sex offender registration as a condition of supervised release only after a series of three thorough hearings at the conclusion of which the court determined that Ybarra had committed, inter alia, sexual assault. We therefore decline to exercise our discretion to correct the requirement that Ybarra register as a sex offender because, under the facts and proceedings of this case, this requirement did not rise to the level of "error so obvious that our failure to notice it would seriously affect the fairness, integrity, or public reputation of [the] judicial proceedings and result in a miscarriage of justice."[35]

### 3. Notice

Finally, Ybarra contends that the sex offender conditions must be vacated because the district court did not give him notice that it was contemplating the imposition of such conditions, thereby violating Federal Rule of Criminal Procedure 32(h). Rule 32(h) states that "[b]efore the court may depart from the applicable sentencing range on a ground not identified for departure either in the presentence report or in a party's prehearing submission, the court must give

---

[34] See United States v. Surasky, 974 F.2d 19, 21 (5th Cir. 1992).

[35] Id.

the parties reasonable notice that it is contemplating such a departure."[36] Rule 32 promotes "focused, adversarial resolution of the legal and factual issues relevant to fixing Guidelines sentences."[37] As this argument was not raised in the district court, our review is again for plain error.[38]

In United States v. Coenen, we held that courts are required to give "reasonable pre-sentence notice" that sexual offender registration provisions are "under consideration."[39] In Coenen, we recognized that "invasive" sex offender notification provisions were analogous to upward departures from the Sentencing Guidelines and thus could not be categorized as simple "occupational restriction[s] . . . which do[] not require . . . notice."[40] But Coenen was decided before United States v. Booker, which invalidated the mandatory features of the Guidelines.[41] Whether, post Booker, sex offender conditions require notice, or even whether there is a notice requirement at all for any conditions in the context of supervised release, is unclear.[42]

We need not address these questions today because even if, arguendo, Ybarra were entitled to notice that the district court was contemplating sex

---

[36] FED. R. CRIM. P. 32(h) (emphasis added). In addition, under Rule 32(h), "[t]he notice must specify any ground on which the court is contemplating a departure." Id.

[37] Burns v. United States, 501 U.S. 129, 137 (1991).

[38] See United States v. Paul, 274 F.3d 155, 172 (5th Cir. 1991).

[39] 135 F.3d 938, 943 (5th Cir. 1998).

[40] Id.

[41] 543 U.S. 220 (2005).

[42] The government argues that, following the Supreme Court's recent decision in Irizarry v. United States,128 S. Ct. 2198 (2008), "there is no notice requirement prior to the imposition of a variance from the Guidelines range of punishment, at least in the context of an original sentencing hearing." The government further urges us to extend this "same reasoning" to "the context of supervised release revocation." We decline to address either of these issues.

offender conditions, he indisputably had "reasonable notice" that such conditions were under consideration. In Coenen, although we held that the defendant was entitled to notice that the court was contemplating sex offender requirements, we upheld the supervised release conditions because Coenen had actual knowledge that the conditions were being considered by the court.[43] As we stated, courts have generally interpreted Rule 32(h) "to require notice either from the court, the PSR [Pre-Sentence Report], or a pre-hearing submission by the Government,"[44] but "other means" can provide sufficient notice, too.[45] "[A]ctual knowledge satisfies the 'reasonable notice' requirements of Rule 32 . . . ."[46]

In the instant case, Ybarra unquestionably had actual knowledge that the district court could be reasonably contemplating sex offender conditions by the time Ybarra received his sentence following revocation of his original term of supervised release, including the conditions imposed on his subsequent term of supervised release. The district court heard testimony on Ybarra's sexual assault and physical assault violations over three days in February and March 2007. Ybarra was present during all three days of hearings. On the first day, February 22, 2007, Saldana discussed in detail Ybarra's sexual assault and physical assault (for refusing his demand that Saldana engage in sexual intercourse). Saladana testified, for example, that Ybarra held her down by her hair and then by her hands, and, against her will, forcibly raped and sodomized her. Saldana also testified that, on another occasion, Ybarra had punched her in the breast area after she refused his sexual advances. We are satisfied that,

---

[43] Coenen, 135 F.3d at 943.

[44] Id. at 944.

[45] Id.

[46] Id. (emphasis added).

after the first day of testimony from Saldana in which these details were revealed, Ybarra was placed on notice that the court could be considering sex offender conditions. By the time the court actually imposed Ybarra's revocation sentence and supervised release conditions on March 19, 2007, at the conclusion of the third day of hearings on his sexual and physical assault violations, Ybarra had been on notice of the substance of the sexually related allegations against him for nearly one month, convincing us that he had actual knowledge that the imposition of sexual offender conditions could well be within the court's contemplation. An approximate one-month period of notice is clearly reasonable enough to assure "focused, adversarial resolution of the legal and factual issues relevant to"[47] Ybarra's supervised release revocation sentence and supervised release conditions. Therefore, we do not hesitate to conclude that Ybarra's actual notice was reasonable, and that the district court did not commit plain error by not providing formal notice.

## III. Conclusion

We hold that the district court did not err reversibly in: (a) ruling that Ybarra violated the terms of his supervised release; (b) imposing a forty-two month sentence; or (c) mandating the sex offender conditions as requirements of Ybarra's additional fifteen-month term of supervised release. The judgment of the district court is AFFIRMED.

---

[47] Burns v. United States, 501 U.S. 129, 139 (1991).