# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

May 1, 2012

No. 10-10401

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff–Appellee

v.

RICHARD LEON JACKSON,

Defendant–Appellant

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:09-CV-707-Y
No. 4:92-CR-175-2

Before KING, BARKSDALE, and PRADO, Circuit Judges.

PER CURIAM:[*]

Defendant–Appellant Richard Leon Jackson appeals the district court's dismissal of his motion for post-conviction relief, contending that his motion is timely under 28 U.S.C. § 2255(f)(4), or, alternatively, that he is entitled to equitable tolling. Because we conclude that the facts underlying Jackson's claim could have been discovered through the exercise of due diligence in 1993, and

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 10-10401

that Jackson failed to exercise such diligence, we find that Jackson's motion is untimely and affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In 1992, Defendant–Appellant Richard Leon Jackson ("Jackson") committed a series of armed robberies in Fort Worth, Texas, and was eventually charged with both state and federal offenses. After consulting with his attorney, Jackson pleaded guilty in federal court to two counts of conspiracy to obstruct commerce by robbery (Counts 2 and 10) and one count of using a firearm during a crime of violence (Count 5), in violation of 18 U.S.C. §§ 2, 924(c), and 1951. The district court sentenced Jackson to concurrent 63 month sentences for Counts 2 and 10, and a consecutive 60 month sentence for Count 5, for a total of 123 months. Jackson was also ordered to serve three years of supervised release. The district court did not state at sentencing or in its judgment that Jackson's federal sentence would run concurrently with any state sentence.

Shortly thereafter, Jackson pleaded guilty to seven counts of aggravated robbery in state court and received a 20-year prison term, which the state court ordered to be served concurrently with his federal sentence. Jackson was placed in state custody, where he remained until he was released on parole in December 2008. Jackson was then immediately taken into federal custody to begin service of his federal sentence.

Soon after he began his federal sentence, Jackson retained counsel and requested credit for the time he served in state custody. The Designation and Sentence Computation Center at the Bureau of Prisons ("BOP") responded to Jackson's request on April 10, 2009, but explained that it had "not received a request from the U.S. Marshals for designation pertaining to Mr. Jackson." It advised that after a designation request was made and it received sentencing materials from the district court, it would be able to "calculate [Jackson's] release date." At Jackson's request, the U.S. Marshals Service submitted a

2

No. 10-10401

request for designation, and on May 6, 2009, the BOP computed Jackson's release date as December 9, 2017.

On November 30, 2009, Jackson, through counsel, filed a motion for post-conviction relief under 28 U.S.C. § 2255. He claimed that his 1993 guilty plea in federal court was not knowing and voluntary because his federal public defender, Larry Brown ("Brown") (now deceased), advised him to plead guilty in federal court because the State was "probably 'done'" with him and would not prosecute since the federal government had "'picked up the charges.'" Brown further allegedly advised Jackson that the "worst thing that would happen" was that the state and federal sentences would be concurrent.  Jackson contends that he relied upon this alleged advice when he decided to plead guilty in federal court. Jackson also claims that he was denied effective assistance of counsel, in light of Brown's alleged advice and Brown's failure to request that the federal court order Jackson's federal sentence to run concurrently with his state sentence.

The government moved to dismiss Jackson's § 2255 motion as untimely. In response, Jackson claimed that he did not learn the facts underlying his claim—that his federal sentence was to run consecutively to his state sentence—until December 2008, when he was released from state custody and taken into federal custody. Jackson asserted that his motion was timely because he filed it within one year of December 2008. Alternatively, he argued that he was entitled to equitable tolling because he was misled by his attorney. The district court dismissed the motion, finding it untimely under 28 U.S.C. § 2255(f)(1) and not subject to equitable tolling. Jackson filed a notice of appeal.

This court granted a certificate of appealability on two issues: (1) whether Jackson filed his motion within one year of "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence," thus rendering the motion timely under 28 U.S.C. § 2254(f)(4), and (2) whether Jackson is entitled to equitable tolling.

3

No. 10-10401

## II. DISCUSSION

*1.    Jackson's Motion is Untimely Under 28 U.S.C. § 2255(f)(4)*

We review de novo the district court's conclusion that Jackson's motion is untimely. *See United States v. Cavitt*, 550 F.3d 430, 435 (5th Cir. 2008) ("In the context of 28 U.S.C. § 2255, this court reviews a district court's factual findings for clear error and its legal conclusions de novo."); *see also United States v. Franks*, 397 F. App'x 95, 97 (5th Cir. 2010).

A § 2255 movant has one year to seek postconviction relief. 28 U.S.C. § 2255(f). This one-year period runs from the latest of four possible dates, the last of which being "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2255(f)(4). For this provision to apply, "a petitioner's diligence must merely be 'due' or 'reasonable' under the circumstances." *Starns v. Andrews*, 524 F.3d 612, 619 (5th Cir. 2008) (analyzing 28 U.S.C. § 2244(d)(1)(D)). As the Supreme Court has explained, "diligence can be shown by prompt action on the part of the petitioner as soon as he is in a position to realize" that he should act. *Johnson v. United States*, 544 U.S. 295, 308 (2005). In applying § 2255(f)(4), "[t]he important thing is to identify a particular time when . . . diligence is in order." *Id.*

We conclude that Jackson's motion is untimely under § 2255(f)(4). The "facts supporting the claim . . . presented," specifically that Jackson's attorney allegedly incorrectly advised him that his federal sentence would run concurrently with his state sentence, could have been discovered immediately after Jackson's sentencing in federal court.[1] At his sentencing, the district judge

---

[1] Because Jackson's conviction became final on or about April 10, 1994, before the enactment of AEDPA, Jackson had until April 24, 1997 to file his § 2255 petition absent a statutory tolling provision that extended the deadline. *See United States v. Riggs*, 314 F.3d 796, 798 (5th Cir. 2002); *United States v. Patterson*, 211 F.3d 927, 929 (5th Cir. 2000) ("This Court has held that federal prisoners challenging convictions or sentences that became final

4

No. 10-10401

informed Jackson that his sentence on Count 5 of the indictment, use of a firearm during the commission of a robbery, "carries a mandatory five-year consecutive sentence pursuant to 18 U.S.C. § 924(c)," and that "[t]he sentence on Count 5 is to run consecutive to the sentence imposed on Counts 2 and 10 as required by law." This statement is reiterated in the plea agreement's factual resume, which explicitly stated that Jackson's sentence for Count 5 "must be consecutive to *any other sentence imposed.*" Similar statements were repeated in the Presentence Investigation Report and in the district court's judgment. These statements are consistent with 18 U.S.C. § 924(c)(1)(D)(ii), which provides, "[n]otwithstanding any other provision of law . . . no term of imprisonment imposed on a person under this subsection shall run concurrently with *any other term of imprisonment* imposed on the person . . . ." 18 U.S.C. § 924(c)(1)(D)(ii) (emphasis added). This provision includes state sentences. *See United States v. Gonzales*, 520 U.S. 1, 11 (1997) ("[W]e hold that the plain language of 18 U.S.C. § 924(c) forbids a federal district court to direct that a term of imprisonment under that statute run concurrently with any other term of imprisonment, whether state or federal."); *see also United States v. Watford*, 468 F.3d 891, 900 n.3 (6th Cir. 2006) ("The 60-month sentence for Count 3 must run consecutive to the state sentence, pursuant to 18 U.S.C. § 924(c)(1)(D)(ii)."). At the very least, therefore, Jackson could have easily discovered in 1993 that his sixty month sentence on Count 5 would run consecutively to his state sentence by virtue of 18 U.S.C. § 924(c)(1)(D)(ii). Moreover, it is well established that "[m]ultiple terms of imprisonment imposed at different times run consecutively unless the court orders that the terms are to run concurrently." 18 U.S.C. § 3584(a). As the federal judgment here is silent on this issue, it imposes a consecutive rather than concurrent sentence.

---

prior to the AEDPA's effective date are accorded one year after the effective date of the AEDPA to file for relief under § 2255.").

No. 10-10401

In light of the requirements of § 924(c), as well as the presumption of § 3584(a), the fact that Jackson's federal sentence would run consecutively to his state sentence could have been discovered through the exercise of due diligence after his sentencing in federal court in 1993, well before Jackson began serving his federal sentence in December 2008. Jackson could have discovered these facts through his own reasonable inquiry, or with the assistance of counsel.

The record demonstrates that Jackson failed to exercise due diligence in discovering the facts underlying his claim. Jackson attempts to justify his lack of diligence by stating that he had no reason to question Brown's alleged advice before December 2008. Jackson argues that he assumed that his sentences would run concurrently based on his attorney's alleged advice and his state court judgments, which ordered his state sentence to run concurrently with his federal sentence. Jackson maintains that, had he been informed earlier that he would not receive credit against his federal sentence, he would have insisted that Brown return to federal court to address the issue or he would have filed an appropriate motion.

Certain aspects of this case, however, undermine Jackson's argument. In an affidavit attached to his § 2255 motion, Jackson admits that he had nagging concerns throughout his time in state prison that his federal sentence would not in fact run concurrently to his state sentence. Jackson explains that while in state prison he "wondered whether [he] would be receiving credit for [his] federal sentences" but that he "did not have any reason to question [his attorney's] advice" and "had no reason to think that [he] was not receiving credit toward [his] federal sentences." Jackson first sought information about his federal sentence from the BOP in 2004. Although the BOP "told [him] that [he] needed to send to them [his] records and transcripts," he "did not know how to obtain" these documents, and therefore did not pursue the issue further. Jackson's own

6

No. 10-10401

statements, therefore, contradict his assertion that he did not think to question his attorney's alleged advice until December 2008.

Jackson's nagging concerns were in fact well founded, as several aspects of Brown's alleged advice (as recounted by Jackson) proved to be incorrect by the time of Jackson's federal and state court sentencings. For example, although Brown allegedly advised Jackson that the state would likely drop its charges after his sentencing in federal court, Jackson instead received a lengthy state prison sentence. Also, while Brown allegedly advised Jackson that the "worst thing that would happen" to Jackson was that his state and federal sentences would run concurrently, Jackson was informed during his federal sentencing that his incarceration for Count 5 would necessarily run consecutively to his other prison terms. Despite these clear indications of error, and his own nagging concerns, Jackson did not exercise due diligence until he actually entered federal custody in December 2008.

The BOP's calculation of Jackson's release date in May 2009 does not change our analysis. We have recognized that the BOP has the sole authority to compute a prisoner's credits, and that "[w]here a federal sentence was imposed before a state sentence, the BOP may indirectly award credit for time served in state prison by designating nunc pro tunc the state prison as the place in which the prisoner serves a portion of his federal sentence." *Pierce v. Holder*, 614 F.3d 158, 160 (5th Cir. 2010); *see also* BOP Program Statement 5160.05, ¶ 9(b)(4) (explaining nunc pro tunc). The BOP has discretion to do so where a "federal sentence [does] not preclude that sentence from running concurrently to a later-imposed state sentence." *Pierce*, 614 F.3d at 160; *see also* BOP Program Statement 5160.05, ¶ 7(e) ("No concurrent designation will be considered when statutory language mandates consecutive service . . . ."). As we have noted above, however, Jackson's federal sentence with respect to Count 5 *does* preclude concurrent service of that sentence with any other prison term. This fact was

easily discoverable, and was relayed to Jackson on several occasions at his 1993 federal sentencing. The BOP calculation, therefore, was not the first occasion on which the facts supporting Jackson's claim could have been discovered. Rather, the calculation merely reconfirmed that Jackson would not receive credit for his state incarceration.[2]

In sum, we conclude that Jackson's claim is not timely under § 2255(f)(4), because "the facts supporting [his] claim . . . could have been discovered through the exercise of due diligence" in 1993, at least by the time of his sentencing in state court. At that point, it should have been apparent to Jackson that Brown's alleged legal advice was at least somewhat suspect, and he should have investigated further.

*2.     Jackson is not Entitled to Equitable Tolling*

AEPDA's statutory limitations are "subject to equitable tolling in appropriate cases." *Holland v. Florida*, 130 S. Ct. 2549, 2560 (2010). A "'petitioner' is 'entitled to equitable tolling' only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Id.* at 2562 (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)); *see United States v. Redd*, 562 F.3d 309, 314 (5th Cir. 2009) (discussing equitable tolling of § 2255 petition). The "diligence required for equitable tolling purposes is reasonable diligence, not maximum feasible diligence." *Holland*, 130 S. Ct. at 2565 (citation and internal quotation marks omitted). "Equitable tolling is permissible only in rare and exceptional circumstances." *United States v. Wynn*, 292 F.3d 226, 230 (5th Cir.

---

[2] Even assuming, *arguendo*, that the BOP calculation was the first time Jackson could have discovered that he would not receive credit for time served on Counts 2 and 10 (which allow for concurrent sentences), his § 2255 claims are based upon his assertion that his attorney misadvised him regarding his entire term of federal incarceration. As Jackson could at the very least have discovered in 1993 that his attorney's alleged advice with respect to Count 5 (which requires a consecutive sentence) was incorrect, his claim is untimely.

No. 10-10401

2002) (citation and internal quotation marks omitted). We do not extend equitable tolling under § 2255(f) to instances of "excusable neglect." *United States v. Kirkham*, 367 F. App'x 539, 541 (5th Cir. 2010) (quoting *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990)). "[T]he decision to invoke equitable tolling is left to the discretion of the district court, and we review such decisions only for abuse of discretion." *Cousin v. Lensing*, 310 F.3d 843, 848 (5th Cir. 2002).

We conclude that equitable tolling is not permissible here because Jackson did not "pursu[e] his rights diligently," *Holland*, 130 S. Ct. at 2562, consistent with our previous discussion. Although Jackson admits that he had concerns about the accuracy of Brown's alleged advice throughout his time in state prison, he did nothing to pursue the issue until 2008. Nor did Brown's alleged bad advice prevent Jackson from pursuing his claim; rather, that advice forms the very basis of his claim.[3] Jackson simply waited more than sixteen years to address the issue, without any adequate explanation for his lack of diligence.

Furthermore, even once Jackson entered federal custody in December 2008, he still waited nearly a year to file his § 2255 motion, without any justification. Jackson was therefore not diligent even after he actually learned of his attorney's alleged error. *See, e.g.*, *Melancon v. Kaylo*, 259 F.3d 401, 408 (5th Cir. 2001) (finding petitioner not entitled to equitable tolling after a delay of four months); *Coleman v. Johnson*, 184 F.3d 398, 402-03 (5th Cir. 1999) (finding petitioner not entitled to equitable tolling after a delay of six months). Jackson has also not shown that an "extraordinary circumstance" stood in his

---

[3] Unlike in *Holland v. Florida*, 130 S. Ct. 2549 (2010), where the Supreme Court applied equitable tolling to Holland's untimely habeas petition because his state-appointed attorney for postconviction proceedings failed "to satisfy professional standards of care," *id.* at 2559-60, 2562, 2565, Jackson's motion is untimely not because of mistakes by his habeas counsel, but rather due to his own lack of diligence.

No. 10-10401

way to prevent timely filing. *Holland*, 130 S. Ct. at 2562.[4] Jackson therefore cannot benefit from equitable tolling.

### III. CONCLUSION

For the reasons stated above, the judgment of the district court is AFFIRMED.

---

[4] Jackson contends that he could not have known that the federal government intended that he serve his federal sentence consecutive to his state sentence, and misled him about the nature of his federal sentence. For reasons discussed earlier, we find that Jackson could easily have discovered in 1993 that his federal sentence would be consecutive to his state sentence. The government did not mislead him in any way.