NOONAN, Circuit Judge,
dissenting:
The majority forbids a federal court from hearing Ford’s habeas petition on the merits, not because the government in Ford’s case did not violate Brady, but because Ford, a prisoner at the time, should have, with due diligence and the help of his wife Beverly, been able to discover the government’s breach of Brady. The majority excuses the government’s lapse while it imposes a new requirement on the spouse of a defendant.
Constance Goins was the prosecution’s principal witness against Ford. In the lead-up to Ford’s trial, the government averred that it knew nothing of an April, 2002 case against Goins for a violation of her probation. It further averred that the status of that case had “no connection” to her testimony in Ford’s case. The government put Goins on the stand at Ford’s trial and elicited testimony from her that she did not inculpate Ford in order to get out of jail. Any listener would have inferred from her statement that she did not receive favorable treatment in the disposition of her case as a result of her cooperation. The detective who interviewed her in jail testified that the police might have helped her by talking to the district attorney in her case, had she not posted bail herself before they had the chance. The inference was that they had not helped her out at all in resolving her criminal cases. The government’s in limine assertions and the testimony of the two state’s witnesses conveyed that Ms. Goins had not been afforded favorable treatment by the prosecution in her own criminal cases in exchange for her testimony against Ford. Ford’s attorney did not independently investigate.
In fact, only after Ford was appointed habeas counsel by the district court in 2005 did the extent of Ms. Goins’ criminal history — and the apparent favorable treatment she had received — surface. Habeas counsel discovered, by ordering copies of Goins’ criminal case files from the Sacramento Superior and Municipal Courts, the following:
After Goins’ September 11, 2000 statement to the detective, her bail was reduced to $8000 and she was released on bail;
One week later, the court sentencing her found unusual circumstances to justify a sentence of probation in that felony case, F07258;
In three separate felony probation cases, the trial court added as a condition of probation that she was to comply with any and all subpoena orders;
*1240 While Ford’s case was being prepared for trial, Goins was arrested again and held to answer for assaulting a woman with a deadly weapon; just before Ford’s trial, the case against her was dismissed on a motion by the district attorney.
Goins had an active criminal history from the time she summoned the detectives to meet her in jail on September 11, 2000 up to the time of Ford’s trial in April, 2002. From all appearances, her testimony against Ford seems to have led to extremely favorable dispositions in at least the felony drug case and the assault with a deadly weapon case. The government provided none of this information to Ford, either before securing his conviction or after. It averred only that there was “no connection” between the disposition in her parole violation case and her testimony against Ford. It elicited testimony from two witnesses suggesting that she was not given favorable prosecutorial treatment. This impression seems to have been misleading.
A. The prosecution violated Brady.
The prosecution has the obligation to turn over evidence favorable to an accused: “[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.” Brady v. Maryland, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The Court went on to hold, in Giglio, “When the ‘reliability of a given witness may well be determinative of guilt or innocence,’ nondisclosure of evidence affecting credibility falls within this general rule [of Brady ].” Giglio v. U.S., 405 U.S. 150, 154, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972) (citing Napue v. Illinois, 360 U.S. 264, 269, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959)). Considering precisely the issue of the motive of a prosecution’s witness to inculpate the defendant, the Court reversed Giglio’s conviction:
Here the Government’s case depended almost entirely on Taliento’s testimony; without it there could have been no indictment and no evidence to carry the case to the jury. Taliento’s credibility as a witness was therefore an important issue in the case, and evidence of any understanding or agreement as to a future prosecution would be relevant to his credibility and the jury was entitled to know of it.
Giglio, 405 U.S. at 154-55, 92 S.Ct. 763.
“Whether the nondisclosure was a result of negligence or design, it is the responsibility of the prosecutor. The prosecutor’s office is an entity and as such it is the spokesman for the Government. A promise made by one attorney must be attributed, for these purposes, to the Government.” Giglio, 405 U.S. at 154, 92 S.Ct. 763. This court has repeatedly so held. See, e.g., Carriger v. Stewart, 132 F.3d 463, 480 (9th Cir.1997) (en banc) (“Because the prosecution is in a unique position to obtain information known to other agents of the government, it may not be excused from disclosing what it does not know but could have learned”); U.S. v. Zuno-Arce, 44 F.3d 1420, 1427 (9th Cir.1995) (exculpatory information in the possession of the FBI covered under Brady). It is also clear that the prosecution is required to turn over evidence favorable to the defense whether or not the defense requests the information. See U.S. v. Bagley, 473 U.S. 667, 682-83, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985); Kyles v. Whitley, 514 U.S. 419, 433, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995).
Ford raises evidence that Goins averted incarceration on more than one occasion in the wake of her cooperation against Ford. The prosecution either knew about the dispositions of Goins’ criminal cases or is *1241 presumed, for Brady purposes, to have known. The prosecution was required to provide this information to Ford.
B. The statute of limitations began to run when Ford discovered the facts underlying the Brady claim.
AEDPA’s one-year statute of limitations runs from “the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.” 28 U.S.C. § 2244(d)(1)(D). What due diligence must a petitioner show when a state’s failure to disclose Brady material leads to a delay in discovering the evidence? Here, the one-year limitations period commenced when Ford’s counsel received Goins’ criminal conviction histories.
The Supreme Court in Strickler v. Greene held that a habeas petitioner had shown cause to excuse a procedural default where he had no reason to believe at the time of trial that the state had withheld Brady evidence. 527 U.S. 263, 287, 289, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999). He was entitled to rely on the state’s duty to disclose. Id. Similarly, Ford had no reason to believe at the time of trial that the government had withheld evidence whose disclosure was required by Brady.
Circuit courts that have confronted this question in the statute of limitations context have held implicitly that the statute of limitations begins to run at the time the petitioner discovers the Brady material. See, e.g., Friedman v. Rehal, 618 F.3d 142, 152 (2d Cir.2010) (limitations period began to run when petitioner saw the film Capturing the Friedmans and thereby discovered that the prosecution had used hypnosis to help the complainants remember); Starns v. Andrews, 524 F.3d 612, 619 (5th Cir.2008) (limitations period began to run when a witness gave exculpatory testimony in a subsequent wrongful death action, where the defendant assumed “the state could be taken at its word” when it turned over the witness’ name before trial but indicated that he would only be marginally helpful); Daniels v. Uchtman, 421 F.3d 490, 491-92 (7th Cir.2005) (limitations period began to run in petitioner’s Brady claim when a witness executed an affidavit recanting his testimony); Slutzker v. Johnson, 393 F.3d 373, 382 (3d Cir.2004) (statute of limitations on Brady claim began to run when habeas petitioner received previously undisclosed police reports).
Our circuit is equally clear. In Quezada v. Scribner, 611 F.3d 1165, 1166-67 (9th Cir.2010), the prosecution suppressed evidence of the compensation that Aflague, its witness, received in exchange for his cooperation against Quezada. The prosecutor represented to the court that Aflague received no benefits in exchange for his testimony. Id. at 1167. However, it later surfaced that Aflague had received between $9,000 and $25,000 for his cooperation with law enforcement over the course of a decade in various cases. Id. Aflague also declared that he had lied about compensation in a different case. Id. Considering the one-year statute of limitations, we reasoned:
Quezada requested compensation information from the court, from the government and from Aflague. Quezada’s attempts to acquire this information were repeatedly rebuffed by silence on the part of the informant, or an outright denial of the existence of missing compensation information by the government. On December 11, 2008, Aflague changed his testimony. Quezada discovered this in the spring of 2009. On the record before us it is clear that Quezada did exercise reasonable diligence yet was unable to acquire this information earlier.
Id. at 1168.
This case is analogous. Ford’s counsel moved in limine to either obtain informa *1242 tion about Goins’ criminal history or to use her convictions for impeachment purposes. When the government averred that any disposition of her probation case was unconnected to Ford’s case, Ford’s attorney accepted the government’s statement. Ford was entitled to rely on the government’s statement and its abiding obligation to comply with Brady. See Strickler v. Greene, 527 U.S. at 289, 119 S.Ct. 1936; Bagley, 473 U.S. at 682-83, 105 S.Ct. 3375.
As an inmate, Ford had neither the knowledge of the relevant case numbers nor the funds with which to gain access to the records of Goins’ criminal history. But the district court and this court endorse the magistrate’s surprising finding that “‘it is more than arguable that Beverly Ford was present and aware of Goins’ various criminal cases and their dispositions’ after Ford’s arrest.” Maj. op. at 1236 (emphasis added). It is now not the state but the spouse who is in “the unique” position to supply Brady information. See id. This imaginative supposition is a bold circumvention of Brady. The only party that bore the constitutional obligation to provide Ford with this information was the government — not Ford, not Goins, and certainly not Beverly Ford.
In the cases relied on by the majority, knowledge of the Brady violation was timely possessed by the habeas petitioner within the one-year limitations period and the government did not keep him in ignorance by denying the Brady violation. See, e.g., Lucidore v. New York State Division of Parole, 209 F.3d 107, 110-11, 113 (2d Cir.2000) (petitioner conceded that he knew facts of Brady violation in April, 1997 but filed his petition on April 22, 1999); Daniels v. Uchtman, 421 F.3d at 492 (factual predicate for timeliness purposes was date the prosecution’s witness executed affidavit recanting trial testimony). These cases do not appear to be binding or even relevant when the petitioner has been misled by denials of the Brady violation by the state.
The rule of law is subverted when the state violates an important constitutional norm and then attempts to minimize the harm it has done. Contrary to constitutional law established by the United States Supreme Court, this panel of the Ninth Circuit excuses a flagrant violation of Brady by imposing upon the wife of an incarcerated defendant the obligation of detecting the state’s breach of Brady within the statutory limitations period.